# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

NEXTFOOD INC.,

    *Plaintiff*,

vs.

HEALTHCARE FOODSERVICE
SOURCING ADVANTAGE, INC., and TOM
STEWART,
    *Defendants/Third Party Plaintiffs*,

and

RESTAURANT PURCHASING
SERVICES, INC., d/b/a
RESTAURANTLINK.

    *Third Party Defendant/Counterclaimant.*

Case No. 09-CV-2148 EFM/KMH

## MEMORANDUM AND ORDER

Plaintiff, NextFood Inc. ("NextFood" or "NF"), filed suit against Defendants, Healthcare Foodservice Sourcing Advantage, Inc. ("HFSA"),[1] and Tom Stewart, for breach of the parties' promissory note and data processing agreement. Stewart counterclaimed, asserting claims of breach of the data processing agreement and agreement master and breach of fiduciary duty. In addition, Stewart also joined Restaurant Purchasing Services Inc. ("RestaurantLink" of "RL"), a wholly owned subsidiary of NextFood, as a third party and asserted claims of breach of the data processing

---

[1]HFSA is not actually a corporation.

agreement, the profit sharing agreement, and agreement master and breach of fiduciary duty against it. RestaurantLink counterclaimed against Stewart, asserting claims of breach of the profit sharing agreement and agreement master and tortuous interference with its business. Now before the Court is NextFood's motion to dismiss Healthcare Foodservice Sourcing Advantage, Inc. (Doc. 34), Stewart's motion for summary judgment (Doc. 42), NextFood's and RestaurantLink's motion for summary judgment (Doc. 46), and NextFood's motion to strike supplemental statement of uncontroverted fact contained in Stewart's reply to its motion for summary judgment (Doc. 61). For the following reasons, the Court grants in part and denies in part the parties' motions.

## I. Background/Facts

NextFood, a Kansas corporation that is solely owned by Richard King, entered into two agreements with Tom Stewart, an individual who does business as Healthcare Foodservice Sourcing Advantage, Inc., and provides cost saving services to large chain food service operations and long term care chain facilities. The first agreement, which was entered into on November 3, 2008, and is governed by Kansas law, was called the data processing agreement. It provided, among other things, that, for sixty months, Stewart would have Foodbuy, an independent third-party, send the data it received from Stewart's distributors to NextFood. To facilitate the processing of this data, NextFood agreed that it would establish a user interference. Because NextFood would be privy to some of Stewart's confidential information, NextFood also agreed, in paragraph five of the agreement, to hold all proprietary information it gleaned from the data in strict confidence. Paragraph seven of the agreement added that

> [i]n the event of HFSA's termination prior to completion of the initial term of this Agreement, HFSA agrees to pay NF pro rata, based on the days remaining in the initial term, $12,500 in liquidated damages, and not as a penalty, to compensate for the costs of establishing the HFSA user interface. Following the expiration of the

initial term of this Agreement, NF startup costs are waived and either party may terminate with or without cause subject to 60 days written notice.[2]

The second agreement, which was executed on November 7, 2008, was a promissory note. The note stated that NextFood would lend Stewart $75,000 and that Stewart would repay the loan in six monthly installments of $12,500. Payment was to begin on January 15, 2009, and each successive payment was to be paid on the fifteenth day of the following five months. The note provided that if an installment payment was not made within ten days of the due date, Stewart was to pay NextFood a late charge equal to eighteen percent of the overdue payment. It also stated that Stewart agreed to pay NextFood all costs, expenses, and reasonable attorney's fees incurred in the collection of the debt.

In addition to the aforementioned agreements, on November 3, 2008, RestaurantLink, a wholly owned subsidiary of NextFood that provides cost-saving services to independent foodservice operators and small foodservice chains,[3] and HFSA entered into a profit sharing agreement. Among other things, this agreement stated that HFSA agreed to grant business considerations to RestaurantLink within HFSA's contracted distribution network, e.g., access to key decision makers within the network, in exchange for a fifty percent share of the net profits that RestaurantLink received from newly established distributors in the next twelve months. The three agreements discussed above were incorporated into an agreement master that the parties executed.

Sometime after the agreements were entered into, Richard King phoned Stewart to inform him that he, along with two others, were going to form NextFood Health Services, a healthcare purchasing organization that would be a competitor to HFSA. Following the phone call, on March

---

[2]*See* Doc. 43-2, ¶ 7.

[3]Richard King is the President of both RestaurantLink and NextFood.

-3-

16, 2009, Stewart's attorney sent King's attorney a letter stating that his client had informed him that King had utilized proprietary information received from HFSA for personal gain in violation of the data processing agreement, and that, due to this breach and others, Stewart may not continue to perform his duties under the parties' agreements. Stewart failed to make his loan payment within ten days of March 15. Furthermore, on March 27, Stewart instructed Foodbuy to stop sending data to NextFood.[4]

On the same date that Stewart made his request to Foodbuy, Plaintiff filed suit, claiming that Stewart had breached both the data processing agreement and the promissory note. Stewart counterclaimed, asserting claims of breach of the data processing agreement and agreement master and breach of fiduciary duty. In addition, Stewart also joined RestaurantLink as a third party and asserted claims of breach of the data processing agreement, the profit sharing agreement, and agreement master and breach of fiduciary duty against it. RestaurantLink counterclaimed against Stewart, asserting claims of breach of the profit sharing agreement and agreement master and tortuous interference with its business.

## II. NextFood's Motion to Dismiss HFSA (Doc. 34)

In its motion, NextFood argues that HFSA should be dismissed because HFSA is merely the name Stewart uses to conduct business, and, for this reason, is not a proper defendant. The Court agrees. Here, it is uncontroverted that HFSA is only Stewart's trade name. Because it is a trade

---

[4]Up until NF's and RL's reply to its motion for summary judgment (Doc. 68), the parties were in agreement that Stewart told Foodbuy to stop sending data on March 27, 2009. However, in their reply, NF and RL argue that Stewart told Foodbuy to stop sending data on February 27, 2009. Because the date does not affect the outcome of the parties' motions, and the parties were in agreement up until NF's and RL's reply that the request was made on March 27, the Court, for purposes of this order, will treat March 27 as the correct date.

-4-

name, HFSA is not a separate legal entity capable of being sued.[5] Therefore, the Court will grant NextFood's motion.

### III. The Parties' Summary Judgment Motions (Docs. 42 & 46)

As noted above, all three parties have filed summary judgment motions. In his motion, Stewart makes two requests: first, that the Court find that he did not breach the data processing agreement, and second, if the Court finds that he did breach the agreement, that it find that NextFood's recovery is limited to the liquidated damages provision in that agreement. In their motion, NextFood and RestaurantLink ask for the following: (1) that the Court grant summary judgment to NextFood on its claim that Stewart breached the data processing agreement; (2) that the Court grant summary judgment to NextFood on Stewart's claims that NextFood breached the data processing agreement and the agreement master; (3) that the Court grant summary judgment to NextFood on its claim that Stewart breached the promissory note; (4) that the Court grant summary judgment to RestaurantLink on its third-party defendant's counterclaims that Stewart breached the profit sharing agreement and agreement master and Stewart tortuously interfered with its business; (5) that the Court find that no confidential information was shared; and (6) that the Court find that no joint venture between the parties existed.

**Legal Standard/Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[6] "An issue of

---

[5] *See, e.g., Bauer v. Pounds*, 762 A.2d 499, 503 (Conn. App. Ct. 2000); *Am. Express Travel Related Servs. Co. v. Berlye*, 414 S.E.2d 499, 501 (Ga Ct. App. 1991); *cf.* 8 *Fletcher Cyclopedia of the Law of Private Corporations* § 3831 ("[U]sing d/b/a or 'doing business as' to associate an assumed or fictitious name with a corporation does not, without more, create a separate legal entity different from the corporation.").

[6] Fed. R. Civ. P. 56(c).

fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[7] A fact is "material" when "it is essential to the proper disposition of the claim."[8] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[9]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[10] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[11]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[12] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[13] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[14] Conclusory allegations alone cannot defeat a properly supported motion

---

[7]*Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[8]*Id.*

[9]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[10]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[11]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[12]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[13]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[14]*Adler*, 144 F.3d at 671.

for summary judgment.[15] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[16]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[17]

**Stewart's Motion for Summary Judgment (Doc. 42)**

In his motion, Stewart first argues that he is entitled to summary judgment on NextFood's claim of breach of the data processing agreement because he did not breach the agreement. According to Stewart, paragraph seven provided him with the ability to terminate the agreement at any time, and, because of this fact, he could not have breached the agreement by terminating it prior to the completion of the initial term. Stewart's first argument raises three questions. The first is whether the data processing agreement has been terminated. Under Kansas law, in the absence of a contractual provision stating otherwise, termination occurs when the non-terminating party receives clear and unambiguous notice that the terminating party intends to no longer be bound by the terms of the parties' agreement.[18] Here, at some point in time, NextFood learned that Stewart told Foodbuy to stop sharing data with it. Furthermore, it is undisputed that NextFood has not received any data from Stewart since at least March of 2009. Therefore, it seems beyond dispute that the data processing agreement has been terminated.

---

[15]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[16]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[17]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[18]*See Warrick v. McKnab's Estate*, 164 Kan. 78, 83, 187 P.2d 502, 506 (1947).

Because the agreement has been terminated, the Court must address the second question raised by Stewart's argument: whether NextFood's actions justified the termination. If they do, it is possible that Stewart could terminate the agreement, without consequence, irrespective of paragraph seven. Based on the parties' briefing, it appears that Stewart believes that his termination was justified because King impermissibly used his confidential information, in violation of paragraph five of the agreement. Stewart, though, has shown the Court no evidence to support this allegation. As a consequence, there is no basis for the Court to grant summary judgment to Stewart that his termination of the contract was not a breach because NextFood's actions justified it.

The third question that Stewart's first argument raises is whether paragraph seven provides Stewart with the ability to terminate the agreement at anytime for any reason (or no reason at all). To this question, the Court answers no. Viewing it as a whole, it is clear that paragraph seven, at least as it relates to the initial period, is a liquidated damages clause. Paragraph seven does not excuse a termination prior to the end of the initial period, rather, it merely sets forth what is to occur if Stewart ceases to supply the contracted-for data. Therefore, the Court denies Stewart's motion for summary judgment that he was entitled to terminate the agreement at any time.

The Court now addresses Stewart's second argument: paragraph seven limits NextFood's recovery upon breach to a pro rata share of $12,500. In its response, NextFood puts forth two arguments for why it does not: first, paragraph seven does not apply because Stewart breached before terminating and Stewart did not give sixty days written notice, and second, even if paragraph

seven does apply, it only covers damages related to the establishment of the user interface.[19] The Court finds NextFood's arguments meritless.

The fact that Stewart may have breached the agreement by failing to supply the contracted-for data before NextFood knew of his intent to terminate the agreement is of no consequence. NextFood has not cited to, nor has the Court found, any case where a court has found that a party's breach prior to their termination of the contract stripped that party of the ability to limit the other party's recovery to the amount stated in the liquidation clause.[20] In light of this dearth, and the fact that the adoption of NextFood's position would lead to an absurd result – e.g., a party could recover more for a partial breach than a total breach – the Court rejects NextFood's claim that Stewart's earlier breach, assuming there was one, deprives him of the use of the liquidation clause.

The Court makes short shrift of NextFood's argument that Stewart had to give sixty days written notice before terminating the agreement. This requirement clearly only applies only after the initial term of the contract has expired. Therefore, because the initial term had not expired at the time Stewart terminated the agreement, Stewart's failure to abide by this provision does not strip him of the use of the liquidated damages clause.

With regard to NextFood's last sub-argument, it too fails. While a liquidated damages clause does not necessarily prevent the recovery of actual damages, it does when the damages that the

---

[19]NextFood does not attempt to argue that the clause in question is an unenforceable penalty. Thus, the Court need not address the issue. *See Carrothers Constr. Co., L.L.C. v. City of South Hutchinson*, 288 Kan. 743, 755, 207 P.3d 231, 241 (2009) (stating that the burden of proving that a liquidated damages clause is unenforceable lies with the party claiming that it is).

[20]The cases cited by NextFood, *Cent. Lumber Co. v. Ark. Valley Lumber Co.*, 86 Kan. 131, 119 P. 321 (1911) and *Robberson Steel Co. v. Harrell*, 177 F.2d 12 (10th Cir. 1949), are inapposite on this issue because they did not involve a liquidated damages clause.

injured party has suffered arose from events covered by the clause.[21]  Here, the clause covered Stewart's failure to supply NextFood with the data it had contracted for, and Stewart breached the agreement by failing to supply the contracted-for data.  Accordingly, NextFood's recovery for its breach of the data processing agreement claim is capped at the pro rata share of $12,500.

In sum, the Court grants Stewart's motion to the extent it seeks to limit NextFood's recovery on its breach of the data processing agreement claim to the amount set forth in paragraph seven.  In all other regards, it is denied.  As to the question of how much Stewart actually owes NextFood, it will have to be answered at trial, as neither party has supplied the Court with sufficient evidence to determine what day the breach occurred.

**NextFood's and RestaurantLink's Motion for Summary Judgment**

In their motion, NextFood and RestaurantLink ask for the following: (1) that the Court grant summary judgment to NextFood on its claim that Stewart breached the data processing agreement; (2) that the Court grant summary judgment to NextFood on Stewart's claims that NextFood breached the data processing agreement and the agreement master; (3) that the Court grant summary judgment to NextFood on its claim that Stewart breached the promissory note; (4) that the Court grant summary judgment to RestaurantLink on its third-party defendant's counterclaims that Stewart breached the profit sharing agreement and agreement master and Stewart tortuously interfered with its business; (5) that the Court find that no confidential information was shared; and (6) that the Court find that no joint venture between the parties existed.

With regard to the first and second request, the Court finds that they should be granted.  As noted above, Stewart terminated the agreement before the end of the initial term.  Furthermore,

---

[21]*See Lawson v. Durant*, 213 Kan. 772, 775, 518 P.2d 549, 551 (1974).

while Stewart has claimed that his termination was preceded by NextFood's breach of the parties' agreements, he has failed to come forth with evidence to substantiate this claim. In light of these facts, the Court grants summary judgment to Nextfood on its claim that Stewart breached data processing agreement. Additionally, the Court also grants summary judgment to Nextfood on Stewart's claim that Nextfood breached the data processing agreement and master agreement.

With regard to the third request, it too should be granted. In his response, Stewart conceded that he defaulted on the promissory note. Accordingly, summary judgment is granted on this claim.

Summary judgment should not be granted, though, in favor of RestaurantLinks on its third-party counterclaims. RestaurantLink's sole basis for claiming that summary judgment should be granted is that because Stewart breached the data processing agreement and promissory note, he breached the agreement master, which incorporates both of these agreements, and because he breached the agreement master, which also incorporates the profit sharing agreement, he breached the profit sharing agreement. After reviewing the relevant documents, the Court does not find that the fact that Stewart breached the data processing agreement and promissory note necessitates a finding that RestaurantLink is entitled to summary judgment on its claims. Thus, the Court denies the fourth request.

The fifth request should be granted. Stewart has failed to come forth with evidence sufficient to raise a factual question as to whether confidential information was impermissibly shared. As a result, the Court grants NextFood's and RestaurantLink's request for summary judgment on the issue.

As for the sixth request, the Court agrees that it should be granted.

A joint venture may only exist by agreement of the parties, and where its existence is controverted, can be found through the mutual acts and conduct of the parties. Although no particular factor is determinative, conduct or acts indicative of a joint venture include: (1) the joint ownership and control of property; (2) the sharing of expenses, profits, and losses; (3) a community of control over and active participation in the management direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement. The party asserting the joint venture has the burden of proving its existence.[22]

Here, the only evidence that even remotely suggests that a joint venture existed between the parties is the clause in the agreement master stating:

HFSA requires startup capital to expand its foodservice business, and seeks to enter into a relationship with NF for rebates and data processing services. NF is able to provide HFSA with a short-term loan, and desires access to certain business considerations that are part of HFSA's current contracted distribution network.[23]

This scant evidence, when viewed in light of the other language in the relevant documents and the parties' actions, is insufficient to raise a genuine issue of material fact as to the existence of a joint venture. Accordingly, the Court grants NextFood's and RestaurantLink's motion as it relates to this issue.

In sum, the Court grants NextFood's request for summary judgment on its claim that Stewart breached the data processing agreement, NextFood's request for summary judgment on Stewart's claims that Nextfood breached the data processing agreement and agreement master, NextFood's request for summary judgment on its claim that Stewart breached the promissory note, and NextFood's and RestaurantLink's request for summary judgment on the issues of whether a joint venture existed between them and Stewart and whether confidential information was impermissibly

---

[22] *Paradigm Alliance, Inc. v. Celeritas Techs.*, LLC, 659 F. Supp. 2d 1167, 1178 (D. Kan. 2009).

[23] Doc. 43-1.

shared. However, the Court denies RestaurantLink's request for summary judgment on its counterclaims.

**IT IS THEREFORE ORDERED** that NextFood's motion to strike supplemental statement of uncontroverted fact contained in Stewart's reply to its motion for summary judgment (Doc. 61) is GRANTED.

**IT IS FURTHER ORDERED** that NextFood's motion to dismiss Healthcare Foodservice Sourcing Advantage, Inc. (Doc. 34) is GRANTED

**IT IS FURTHER ORDERED** that Stewart's motion for summary judgment (Doc. 42) is GRANTED IN PART and DENIED IN PART.

**IT IS FURTHER ORDERED** that NextFood's and RestaurantLink's motion for summary judgment (Doc. 46) is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED**.

Dated this 2nd day of February, 2011.

*/s/ Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE